UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 4:20 CR 98 HEA/JMB |
| ALEXIS DORJAY BUTLER, | ) ) | |
| Defendant. | ) ) | |

## **GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

## 1. **PARTIES**:

The parties are the defendant **Alexis D. Butler**, represented by defense counsel **Patrick Kilgore**, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

## 2. **GUILTY PLEA**:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant Alexis Dorjay Butler's ("the Defendant") voluntary plea of guilty to Counts 1, 11, and 33 of the charge, the Government agrees to move for the dismissal as to the Defendant of Counts 12 to 20, and 34-40 at the time of sentencing. Moreover, the United States agrees that no further federal criminal prosecutions will be brought in this District relative to the Defendant's (a) possession, use, purchase, sale, or distribution of illegal prescriptions or controlled substance

1

medications obtained through the use of illegal prescriptions written by or containing the name of any co-defendant and (b) the submission of above described-illegal prescriptions to health care benefit programs, from 2015 to January 2020, of which the Government is aware at this time.

The parties agree to only hold Defendant Alexis Butler accountable for the Schedule II, III and IV Controlled Substances that she, Tijuana Spates, Ebony Price, and Erica Spates possessed and distributed during the conspiracy period charged in the instant indictment. The parties also agree to a cap of sixty (60) months of incarceration, with the remaining sentencing conditions, such as supervised release, to be left to the discretion of the Court. As further set forth in this agreement, a cap of sixty (60) months constitutes a substantial downward variance from the anticipated advisory sentencing guideline and is agreed to by the parties to reach a just sentence which balances aggravating and mitigating factors related to the Defendant.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that the Defendant may request a sentence below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court, pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

## 3. ELEMENTS:

As to Count 1, the Defendant admits to knowingly violating Title 18, United States Code, Section 371, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, two or more persons reached an agreement or came to an understanding to knowingly and intentionally possess with the intent to distribute a controlled substance,

*Two*, the Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect;

*Three*, at the time the Defendant joined in the agreement or understanding, she knew the purpose of the agreement or understanding; and

*Four*, while the agreement or understanding was in effect, a person or persons who had joined in the agreement or understanding knowingly did one or more overt acts for the purpose of carrying out or carrying forward the agreement or understanding.

As to Count 11, the Defendant admits to knowingly violating Title 21, United States Code, Section 843(a)(3) and admits there is a factual basis for the plea and further fully understands that the elements of the crime of acquiring or obtaining possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge are:

*One*, the Defendant acquired and obtained a controlled substance;

*Two*, the Defendant acted knowingly and intentionally; and

*Three*, the acquisition of the controlled substance was the result of misrepresentation, fraud, forgery, deception, or subterfuge.

As to Count 33, the Defendant admits to knowingly violating Title 18, United States Code, Section 1347, and admits there is a factual basis for the plea and further fully understands that the elements of the crime executing a health care fraud scheme are:

*One*, the Defendant knowingly devised or knowingly participated in a scheme or artifice to obtain money or property by means of false or fraudulent pretenses, representations, or promises;

*Two,* the pretenses, representations, or promises were material, that is, they would reasonably influence a person to part with money or property;

*Three*, the Defendant did so with the intent to defraud;

*Four,* the purpose of the scheme and artifice to defraud was to obtain money or property owned by or under the custody or control of a health benefit program; and

*Five,* the Missouri Medicaid Program is a federal health benefit program.

## 4.  FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial.  These facts may be considered as relevant conduct pursuant to Section 1B1.3:

### Defendants

a.      At all relevant times, co-defendant Stanley L. Librach, M.D. ("Dr. Librach"), was a medical doctor, licensed to practice medicine in the State of Missouri.

b.      At all relevant times, co-defendant Asim Muhammad Ali, M.D. ("Dr. Ali") was a medical doctor, licensed to practice medicine in the State of Missouri.

c.      At all relevant times, co-defendant Jerry Dale Leech, D.C. ("Dr. Leech") was a doctor of chiropractic medicine, licensed to practice chiropractic medicine in the State of

Missouri. Dr. Leech has never been licensed as a medical doctor or otherwise authorized to practice as a medical doctor in the United States.

d.       At all relevant times, the Defendant was a resident of St. Louis City, Missouri and a Medicaid recipient.

e.       At all relevant times, co-defendant Ebony R. Price ("Price") was a resident of St. Louis County, Missouri and a Medicaid recipient.

f.       At times relevant to this indictment, co-defendant Tijuana A. Spates ("T. Spates") and Erica Spates ("E. Spates") were residents of St. Louis City, Missouri and Medicaid recipients.

g.       At all relevant times, the Defendant, her co-defendants, and other co-conspirators worked together to obtain illegal prescriptions for controlled substance medications, including but not limited to oxycodone, for themselves and others, with the intent to sell or distribute the illegal prescriptions or the controlled substances. The Defendant knew the doctors, listed on the prescriptions as the prescribing doctors, did not have a doctor-patient relationship with the patients listed on the prescriptions and had not examined or determined that the patients had a medical need for the controlled substance medications.  The Defendant also knew that pharmacies would submit reimbursement claims to Medicare and Medicaid for the medications obtained through the use of the illegal prescriptions.

### Relevant Missouri Medicaid Provisions

h.       MO HealthNet administers the Missouri Medicaid Program, which is jointly funded by the State of Missouri and the federal government.  Missouri Medicaid reimburses health care providers for covered services rendered to low-income Medicaid recipients.

i.       On about September 4, 2004, May 9, 2016, and December 20, 2013,

5

respectively, co-defendants Dr. Librach, Dr. Ali, and Dr. Leech signed Missouri Medicaid provider agreements, which contained the following promises: "I will comply with the Medicaid manual, bulletins, rules, and regulations as required by the Division of Medical Services and the United State Department of Health and Human Services in the delivery of services and merchandise and in submitting claims for payment."

### Relevant Provisions Concerning Controlled Substance

j.      Certain prescriptions drugs are defined by federal and state law as controlled substances, which are drugs that have some potential for abuse or dependence. Controlled substances are placed into one of five schedules, based on the potential for abuse and the severity of the effects if a person abuses the drug. Of the controlled drugs that can legally be prescribed, Schedule II drugs have the highest potential for abuse because of the risks of severe psychological or physical dependence. Oxycodone, hydrocodone, methadone, morphine, hydromorphone, oxymorphone, fentanyl, and amphetamines are Schedule II drugs.

k.      Federal regulation, 21 CFR 1306.04(a), provides that:

a prescription drug for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing of a controlled substances is upon the prescribing practitioner . . . . An order purporting to be a prescription issued in the usual course of professional practice . . . is not a prescription within the meaning of section 309 of the Act (21 U.S.C. 829) and the person . . . issuing the [purported prescription] shall be subject to the penalties provided for violations of the provision of law relating to controlled substances.

l.      The Missouri Board of Registration for the Healing Arts ("Board") licenses and regulates medical doctors and certain other health care practitioners. The Board prohibits medical doctors from signing a blank prescription form or otherwise prescribing a "drug,

controlled substance or other treatment" unless the doctor has established a physician-patient relationship and conducted a sufficient examination of the patients.  See R.S. Mo. 334.100(2)(4).

## Description of the Conspiracy and Scheme

m.      Dr. Librach and Dr. Ali routinely pre-signed controlled substance prescriptions for patients, who did not have a doctor-patient relationship with them and who did not have a medical need for the controlled substance medications.

n.      Dr. Leech solicited and received money from individuals in exchange for fraudulent prescriptions.  Dr. Leech knew the individuals did not have a doctor-patient relationship with the doctors he listed or caused to be listed on the fraudulent prescriptions. The Defendant, accompanied at times by co-defendants E. Spates, Price, or T. Spates, met with Dr. Leech, usually two times a month. T. Spates gave Dr. Leech the names to be listed on the fraudulent controlled substance prescriptions and Dr. Leech prepared or caused the fraudulent prescriptions to be prepared.

o.      Co-defendant T. Spates typically paid Dr. Leech between $200 and $500 for each prescription for controlled substances, including oxycodone and oxycodone/acetaminophen prescriptions.  T. Spates paid Dr. Leech about $4,000 to $5,000 each time she received fraudulent prescriptions from him.

p.      The Defendant, co-defendants T. Spates, E. Spates, and Price, and others recruited or identified individuals to be listed as patients on the fraudulent prescriptions. In reality, these individuals were relatives, friends and acquaintances of the defendants, were not patients of Dr. Librach, and did not have a doctor-patient relationship with Dr. Librach.

q.      Prior to their names being used, some individuals listed on the fraudulent prescriptions reached an agreement with T. Spates, permitting her to use their names on the

fraudulent prescriptions. As payment, T. Spates gave these un-indicted co-conspirators money or controlled substances obtained with the fraudulent prescriptions. Other individuals did not know their names were used on the fraudulent prescriptions until after the prescriptions were filled. Once they discovered their names had been used, T. Spates paid some of these individuals to keep them from reporting the fraud.

r.      The Defendant and her co-defendants filled or had others fill the fraudulent prescriptions at local pharmacies, including St. Louis Hills Pharmacy, Olive Street Pharmacy, Walgreens pharmacies, and Shop 'n Save pharmacies.

s.      In some instances, pharmacies called to determine if a prescription was legitimate. Dr. Leech instructed his staff to tell the pharmacies that the prescriptions were legitimate, although he knew the prescriptions were fraudulent.

t.      On or about June 15, 2016, the Defendant caused fraudulent prescription (#211305) for 10/325 mg oxycodone/acetaminophen, 120 tablets, to be filled at St. Louis Hills Pharmacy, located at 4365 Chippewa in St. Louis, Missouri. The prescription listed the patient as E. Spates and listed the prescribing doctor as Dr. Librach.

u.      On or about August 22, 2016, co-defendant Price caused a prescription (#18691) for 10/325 mg oxycodone/acetaminophen, 120 tablets, to be filled at Olive Street Pharmacy, located at 10420 Olive Street in Creve Coeur, Missouri. The prescription listed the patient as D.P. and listed Dr. Librach as the prescribing doctor.

v.      On or about August 22, 2016, co-defendants T. Spates and Price caused a fraudulent prescription (#29983) for 10/325 mg oxycodone/acetaminophen, 120 tablets, to be filled at Olive Street Pharmacy. The prescription listed the patient as D.P. and listed the prescribing doctor as Dr. Librach.

w.      On or about May 22, 2017, co-defendant Price caused a fraudulent prescription (#4525370) for 10/325 mg oxycodone/acetaminophen, 120 tablets, to be filled at a Walgreens Pharmacy, located at 9285 Halls Ferry Rd. in Jennings, Missouri.  The prescription listed M.R. as the patient and listed Dr. Librach as the prescribing doctor.

x.      On or about July 27, 2017, co-defendant Price caused a fraudulent prescription (#4521559) for 30 mg oxycodone HCL, 120 tablets, to be filled at a Walgreens Pharmacy, located at 4218 Lindell Blvd. in St. Louis, Missouri.  The prescription listed J.S. as the patient and listed Dr. Librach as the prescribing doctor.

y.      On or about August 7, 2017, co-defendant Price caused a fraudulent prescription (#4557455) for 30 mg oxycodone HCL, 90 tablets, to be filled at Walgreens Pharmacy, located at 9285 Halls Ferry Rd, in Jennings, MO.  The prescription listed G.B. as the patient and listed the prescribing doctor as Dr. Librach.

z.      On or about September 22, 2017, co-defendant Price caused a fraudulent prescription (#2221613) for 10/325 mg oxycodone/acetaminophen, 120 tablets, to be filled at Walgreens Pharmacy, located at 10500 St. Charles Rock Rd., St. Louis, Missouri.  The prescription listed the patient as T.A. and listed the prescribing doctor as Dr. Librach.

aa.      On or about November 7, 2017, co-defendant Price caused a fraudulent prescription (#2059691) for 10/325 mg oxycodone/acetaminophen, 120 tablets, to be filled at SSM Health Pharmacy, located at 12266 De Paul Dr., Ste. 105, Bridgeton, MO.  The prescription listed the patient as F.E. and listed the prescribing doctor as Dr. Librach.

bb.      The Defendant admits that or about September 17, 2015, she and her co-conspirators knowingly and willfully executed a scheme to defraud the Missouri Medicaid Program, in connection with the delivery and payment for health care benefits, items, and

services by submitting or causing the submission of a false and fraudulent reimbursement claim to the Missouri Medicaid Program, a federal health care benefit program, for Patient T.A. for a prescription, dated September 17, 2015, for a controlled substance medication.

cc.     The parties stipulate that between in or about 2014 to in or about 2018, the Defendant and her co-defendants possessed, with the intent to distribute, the Schedule II, Schedule III and Schedule IV controlled substances as outlined in the chart below:

| Controlled Substance | | Pills/Units | | Equivalent KG of Marijuana |
|---|---|---|---|---|
| Oxycodone | | 109,807 | | 11,782 |
| Hydrocodone | | 7,227 | | 469 |
| Methadone | | 2771 | | 9.1 |
| Morphine | | 1830 | | 13.73 |
| Hydromorphone | | 1470 | | 25.5 |
| Oxymorphone | | 1110 | | 111 |
| Fentanyl | | 655 | | 0.06 |
| Amphetamines | | 240 | | 144 |
| Schedule III Drugs | | 5360 | | 5.36 |
| Schedule IV Drugs | | 10, 153 | | 0.64 |
| | Total Pills | 130,470 | Total KG | 12,561 |

dd.     The amount of Schedule II, III and IV controlled substances attributable to defendant Alexis Butler is not subject to precise calculation.  However, based upon the available evidence, including medical records, Medicaid claims data, and other records, the parties have agreed to hold defendant Alexis Butler accountable for 4363 kilograms of marijuana which is the equivalent of the amount of controlled substances (43,530 pills) that she, T. Spates, Price, and

10

E. Spates possessed and distributed during the conspiracy period charged in the instant indictment.

5. **STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the crime of conspiracy, as charged in Count 1, to which the defendant is pleading guilty is imprisonment of not more than 5 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

The defendant fully understands that the maximum possible penalty provided by law for the crime of obtaining controlled substances by fraud and deceit, as charged in Count 11, to which the defendant is pleading guilty is imprisonment of not more than 4 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 1 year.

The defendant fully understands that the maximum possible penalty provided by law for the crime of executing a health care fraud scheme, as charged in Count 33, to which the defendant is pleading guilty is imprisonment of not more than 10 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

6. **U.S. SENTENCING GUIDELINES:  2018 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

11

a. **Chapter 2 Offense Conduct**:

(1) **Base Offense Level**:  The parties agree that the base offense level for Count 1 is **32** as found in Section 2D1.1 and 2X1.1.  The parties agree that the base offense level for Count 11 is **8**, as found in Section 2D2.2.  The parties agree that the base offense level for Count 33 is **6**, as found in Section 2B1.1.

(2) **Specific Offense Characteristics**:  The parties agree that the following Specific Offense Characteristics apply:  None

b. **Chapter 3 Adjustments**:

(1) **Acceptance of Responsibility**:  The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty.  The parties agree that the defendant's eligibility for this deduction is based upon information presently known.  If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

(2) **Other Adjustments**:  The parties agree that the following additional adjustments apply:  None.

c. **Other Adjustment(s)/Disputed Adjustments**:  None

d. **Estimated Total Offense Level**:  The parties estimate that the Total Offense Level is **29**.

e. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

f. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

a. **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

(1) **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

(2) **Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category.

13

Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

    **b. <u>Habeas Corpus</u>:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **c. <u>Right to Records</u>:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. <u>OTHER</u>:**

    **a. <u>Disclosures Required by the United States Probation Office</u>:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    **b. <u>Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies</u>:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    **c. <u>Supervised Release</u>:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the

defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished

   d. **Mandatory Special Assessment**:  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $300 which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

   e. **Possibility of Detention**:  The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

   f. **Fines, Restitution and Costs of Incarceration and Supervision**:  The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision.  The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately.  Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c).  Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss.  The defendant agrees to provide full restitution to all victims of all charges in the indictment.

## 9. <u>ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS</u>:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

16

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. **CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position

supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. <u>NO RIGHT TO WITHDRAW GUILTY PLEA:</u>

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

2-10-21

_____
Date

_____
*Dorothy L. McMurtry*
DOROTHY L. McMURTRY
Assistant United States Attorney

2/10/21
_____
Date

_____
Defendant   ALEXIS BUTLER

2/10/21
_____
Date

_____
PATRICK ~~T~~ KILGORE
Attorney for Defendant

18